IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

EDNA H.,

              Plaintiff,

    v.

COMMISSIONER, SOCIAL
SECURITY ADMINISTRATION,

            Defendant.

CIVIL ACTION FILE

NO. 1:18-CV-1178-JFK

## FINAL OPINION AND ORDER

Plaintiff in the above-styled case brings this action pursuant to § 205(g) of the

Social Security Act, 42 U.S.C. § 405(g), to obtain judicial review of the final decision

of the Commissioner of the Social Security Administration which denied her disability

application. For the reasons set forth below, the court **ORDERS** that the

Commissioner's decision be **AFFIRMED**.

## I.    Procedural History

Plaintiff filed an application for a period of disability and disability insurance

benefits on May 19, 2014, alleging that she became disabled on April 30, 2014.

[Record ("R.") at 20, 189]. After Plaintiff's application was denied initially and upon

reconsideration, a hearing was held by an Administrative Law Judge ("ALJ") on

October 20, 2016. [R. at 20, 36-79, 131, 141]. The ALJ issued a decision denying

Plaintiff's claim on March 29, 2017, and the Appeals Council denied Plaintiff's request

for review on January 16, 2018. [R. at 8-13, 20-30]. Plaintiff filed a complaint in this

court on March 21, 2018, seeking judicial review of the Commissioner's final decision.

[Doc. 3]. The parties have consented to proceed before the undersigned Magistrate

Judge.

## II.    Facts

The ALJ found that Plaintiff has the following impairments which are severe

within the meaning of the Social Security regulations: diabetes mellitus and

hypertension. [R. at 22]. The ALJ also found that the following are non-severe

impairments: obesity, diabetes, degenerative joint disease, lumbar disc disease, and

depression. [R. at 22-23]. Despite the existence of these impairments, the ALJ found

that Plaintiff does not have an impairment or combination of impairments that meets

or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404,

Subpart P, Appendix 1. [R. at 24]. The ALJ found that Plaintiff is able to perform her

past relevant work as a companion because it does not require the performance of

work-related activities precluded by Plaintiff's residual functional capacity ("RFC").

[R. at 28]. The ALJ also made an alternative finding that there are other jobs that exist

AO 72A

(Rev.8/82)

in significant numbers in the national economy that Plaintiff can perform. [R. at 29-30]. As a result, the ALJ concluded that Plaintiff was not under a disability from April 30, 2014, the alleged onset date, through the date of the ALJ's decision. [R. at 30].

The decision of the ALJ [R. at 20-30] states the relevant facts of this case as modified herein as follows:

The claimant was born on May 11, 1960, and was 53 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date. The claimant subsequently changed age category to advanced age. (20 C.F.R. § 404.1563). The claimant has at least a high school education and is able to communicate in English. (20 C.F.R. § 404.1564).

The claimant has left hip pain, left shoulder pain, diabetic retinopathy, low back pain, and obesity. The evidence shows that the claimant is 5'7" in height and weighs 203 pounds, which is obese. (Ex. 2F at 24). The claimant is to follow a diet plan, avoid high calorie drinks, and exercise. With regard to lumbar disc disease, the claimant reported low back pain radiating down into her right leg. (Ex. 6F at 20). In July of 2014, the claimant was involved in an automobile accident resulting in moderate low back, neck, and head pain. (Ex. 8F at 35). Examination revealed little, if any, evidence of joint pain, joint swelling, neck pain, extremity pain, extremity

AO 72A
(Rev.8/82)

swelling, motor deficits, or sensory deficits. (Ex. 8F at 36). The claimant did not require overnight hospitalization, but she was prescribed pain medication upon discharge from the Emergency Room. (Ex. 8F at 38). An MRI of the lumbar spine revealed multi-level degenerative disc disease at L4-L5 with right disc protrusion, and she had difficulty walking on her heels and toes due to pain. (Ex. 6F at 20-21). Notwithstanding, the evidence shows that the claimant walked with a normal gait, had normal muscle tone, and 5/5 muscle strength in all major muscle groups. (Ex. 6F at 8, 21). Straight leg raising was negative, and range of motion in the lumbar spine was painless. (Ex. 8F at 37).

At the hearing, the claimant reported having significant left shoulder pain. However, there is little or no evidence of any fracture, dislocation, joint arthritis, or joint swelling of the shoulder. (Ex. 11F at 3, 4, 6, 18). The claimant alleged having left hip pain which caused difficulty getting out of bed in the morning due to stiffness, but there is little evidence to support disabling degenerative hip disease. The claimant also alleged having decreased visual acuity. However, there is no neovascularization and no clinically significant macular edema. (Ex. 9F at 5; Ex. 10F at 82).

The claimant has alleged severe depression. However, her depression does not cause more than minimal limitation in her ability to perform basic mental work

4

activities, and there is no medical opinion that her depression significantly limits her ability to perform work-like activities.

On June 23, 2014, the claimant completed a Function Report. (Ex. 7E). She reported having diabetic neuropathy in her hands and feet. The claimant stated that she is able to prepare light meals, complete household cleaning, do laundry, drive, grocery shop, follow written and verbal instructions, and get along with people. Notwithstanding, she reported that she required help with vacuuming, washing dishes, putting clothes in the dryer, and performing yard work. In addition, the claimant reported having difficulty sustaining attention/concentration due to depression.

The claimant testified that she has suffered with diabetic neuropathy for twenty years, which has progressed to requiring insulin three times per day. She also reported having ongoing bilateral foot pain as a result of diabetes. The claimant stated that she required brief hospitalizations in 2012 and in 2014 at Eastside Emory Hospital due to uncontrolled blood glucose levels, bilateral foot pain, and episode of syncope.

The claimant alleges that diabetic neuropathy has limited her mobility, balance, and ability to operate foot controls. She alleges that diabetic retinopathy has affected both eyes, causing blurry vision and bleeding behind her eyes. The claimant also alleges that bending or stooping causes left hip and knee pain and that she is limited

AO 72A
(Rev.8/82)

to walking no more than five to ten minutes and sitting for twenty to thirty minutes (with no low sitting). She further reported having difficulty with overhead reaching with the left arm due to previous car accidents and bursitis.

The claimant reported that she took prescribed pain medications for diabetic neuropathy but that the medication caused drowsiness, balance problems, and disorientation. She testified that her foot pain was generally at level eight in severity on a pain scale of one to ten. Nonetheless, the claimant reported never being pain-free. She stated that, on good days after taking medication, her pain dropped to a five or six in severity but that, on a bad day, her pain remained at a high level.

The claimant further indicated having low back pain due to degenerative disc disease with lumbar spondylosis, subsequent to a car accident in 2000. To treat her disc disease, the claimant testified that she uses hot compresses and Advil. In addition, the claimant testified that she suffers from hypertension, which causes "nagging" headaches and tiredness to the point where she must lie down (time not specified).

With regard to performing activities of daily living, the claimant indicated that she was able to perform self-care needs unassisted, make up her bed, do some household chores, load the dishwasher, make herself breakfast, drive, and grocery

shop. For entertainment, she reported that she used to enjoy bowling but that she quit due to her physical condition.

The claimant has suffered with diabetes for a number of years. Documented blood workup revealed an A1C of 10%, but her goal was set for 7%. (Ex. 2F at 8, 9). Originally, the claimant was treated with Metformin due to an A1C level of 6.5%, but the medication was not well tolerated. (Ex. 6F at 43). Thereafter, the claimant developed uncontrolled diabetes with diabetic neuropathy, including burning, tingling, and numbness in her hands and feet. (Ex. 2F at 23). The claimant has been instructed to use insulin before breakfast and before dinner. (Ex. 2F at 8, 17; Ex. 13F at 34).

In 2014, the claimant complained of burning, stabbing pain, along with worsening numbness and tingling in both legs, feet, and hands, which started sometime in 2013. (Ex. 6F at 28, 37; Ex. 9F at 3, 4, 10). She reported only minimal relief with ointment, Tramadol, and increased dosages of Gabapentin. The claimant also wore compression stockings due to painful varicose veins and stocking gloves due to bilateral hand neuropathy. (Ex. 6F at 19, 23; Ex. 9F at 5). She reported a pain level of eight on a scale of one to ten. (Ex. 9F at 10). After taking Gabapentin, she reported much improvement in her feet. (Ex. 9F at 3).

AO 72A
(Rev.8/82)

The claimant has a history of hypertension. She was initially treated with Lisinopril, but it caused side effects of dizziness. The claimant was then switched to Losartan, but now she is treated with Atorvastatin. (Ex. 2F at 15, 23). There is no evidence of chest pain, lightheadedness, or end-organ damage.

Dianne J. Bennett-Johnson, M.D., examined the claimant on February 23, 2016. (Ex. 12F). During the clinical interview, the claimant reported having diabetic neuropathy, which worsened over the past few years. She reported having fluctuating blood glucose levels from the 300's to the 100's. She also reported having neuropathy and carpal tunnel syndrome both affecting the use of her hands. In addition, the claimant reported suffering from depression. Upon physical examination, the claimant walked with a normal gait but she was not able to tandem walk. There was no evidence of any extremity edema. Motor strength in both upper and lower extremities was 5/5. Dr. Bennett-Johnson opined that the claimant would be limited to performing less than sedentary work with postural, manipulative, and environmental limitations. (Ex. 12F).

Even though the claimant alleged ongoing and worsening burning, tingling, and numbness of both upper and lower extremities, these symptoms were mainly due to non-compliance of missing doses of insulin in the evening. (Ex. 2F at 18; Ex. 6F at

8

10; Ex. 9F at 10; Ex. 10F at 3, 28). The evidence also reveals that the claimant was repeatedly advised to comply with diet, exercise, and medications. (Ex. 10F at 5). When the claimant is compliant with taking Gabapentin, the evidence reveals medical improvement. (Ex. 9F at 3). "The claimant admitted Gabapentin has really helped. Reports much improvement in feet." (Ex. 6F at 8; Ex. 10F at 3). Moreover, with regard to the ulceration of the claimant's feet, the evidence shows that all wounds healed and resolved upon the claimant becoming compliant with taking medication. (Ex. 6F at 7, 8). The claimant was advised to avoid all barefoot walking, wear diabetic shoes and compression stockings, and seek diabetic foot exam yearly. There were no signs of foot infection. (Ex.6F at 8; Ex. 10F at 30).

The record also contains opinions from state agency consultants Michael Amburgey, M.D., and Louise Tashjian, M.D. Dr. Amburgey opined that the claimant would be limited to performing medium work with: occasionally climbing ladders, ropes, and scaffolds; frequently balancing; avoiding concentrated exposure to extreme cold, extreme heat, and hazards; and avoiding unprotected heights. Dr. Tashjian opined that the claimant was limited in performing medium work with: frequently climbing ramps and stairs, balancing, stooping, kneeling, crouching, and crawling;

9

occasionally climbing ladders, ropes, and scaffolds; and avoiding concentrated exposure to extreme cold and extreme heat, hazards, and unprotected heights.

The record also contains statements from an Adult Third Party Function Report from the claimant's husband John Harrison, Sr. (Ex. 10E). Mr. Harrison reported that his wife was a diabetic with bilateral neuropathy in her hands and feet. He indicated that the claimant was disabled and required help getting in and out of the bathtub and using the restroom. However, he indicated that the claimant was able to shop, follow spoken and written instructions, and get along with people.

Additional facts will be set forth as necessary during discussion of Plaintiff's arguments.

## III.   Standard of Review

An individual is considered to be disabled if she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A).   The impairment or impairments must result from anatomical, psychological, or physiological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques and must be of such severity

that the claimant is not only unable to do her previous work but cannot, considering age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. See 42 U.S.C. §§ 423(d)(2) and (3).

"We review the Commissioner's decision to determine if it is supported by substantial evidence and based upon proper legal standards." Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Id. at 1440. "Even if the evidence preponderates against the [Commissioner's] factual findings, we must affirm if the decision reached is supported by substantial evidence." Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). "'We may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner].'" Phillips v. Barnhart, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (quoting Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983)).

"The burden is primarily on the claimant to prove that [s]he is disabled, and therefore entitled to receive Social Security disability benefits." Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing 20 C.F.R. § 404.1512(a)). Under the regulations as promulgated by the Commissioner, a five step sequential procedure is followed in order to determine whether a claimant has met the burden of proving her

11

disability.  See Doughty, 245 F.3d at 1278; 20 C.F.R. §§ 404.1520, 416.920.  At step one, the claimant must prove that she is not engaged in substantial gainful activity.  See id.  The claimant must establish at step two that she is suffering from a severe impairment or combination of impairments.  See id.  At step three, the Commissioner will determine if the claimant has shown that her impairment or combination of impairments meets or medically equals the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  See Doughty, 245 F.3d at 1278; 20 C.F.R. §§ 404.1520, 416.920.  If the claimant is able to make this showing, she will be considered disabled without consideration of age, education, and work experience.  See id.  "If the claimant cannot prove the existence of a listed impairment, [s]he must prove at step four that [her] impairment prevents [her] from performing [her] past relevant work."  Doughty, 245 F.3d at 1278.  "At the fifth step, the regulations direct the Commissioner to consider the claimant's residual functional capacity, age, education, and past work experience to determine whether the claimant can perform other work besides [her] past relevant work."  Id.  If, at any step in the sequence, a claimant can be found disabled or not disabled, the sequential evaluation ceases and further inquiry ends.  See 20 C.F.R. §§ 404.1520(a), 416.920(a).

12

## IV.    Findings of the ALJ

The ALJ made the following findings of fact and conclusions of law:

1.    The claimant meets the insured status requirements of the Social Security Act through December 31, 2020.

2.    The claimant has not engaged in substantial gainful activity since April 30, 2014, the alleged onset date.  (20 C.F.R. § 404.1571, *et seq.*).

3.    The claimant has the following severe impairments: diabetes mellitus and hypertension.  (20 C.F.R. § 404.1520(c)).

4.    The claimant has the following non-severe impairments: obesity, diabetes, degenerative joint disease, lumbar disc disease, and depression.

5.    The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526).

6.    The claimant has the residual functional capacity to perform medium work as defined in 20 C.F.R. § 404.1567(c) except that the claimant must never climb ladders, ropes, or scaffolds, and the claimant must avoid all unprotected heights or unprotected machinery.

7.    The claimant is capable of performing past relevant work as a companion.  This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity.  (20 C.F.R. §§ 404.1565).

8.    The claimant has not been under a disability, as defined in the Social Security Act, from April 30, 2014, through the date of the ALJ's decision.  (20 C.F.R. §§ 404.1520(f)).

[R. at 22-30].

13

## V.    Discussion

Plaintiff argues that the ALJ's decision denying her disability application should be reversed. [Doc. 12]. According to Plaintiff, the ALJ erred because he failed to consider the side effects of Plaintiff's medications and their resulting functional limitations. [Id. at 10-15]. Plaintiff also contends that the ALJ committed reversible error because he did not properly evaluate Plaintiff's subjective testimony about her pain. [Id. at 15-22]. For a number of reasons, the court finds that the decision of the ALJ was supported by substantial evidence and was the result of the application of proper legal standards.

When a claimant seeks to establish disability through subjective testimony of pain, a "pain standard" established by the Eleventh Circuit applies. Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991). The claimant can satisfy this standard by showing: "(1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." Wilson v. Barnhart, 284 F.3d 1219, 1225 (11th Cir. 2002) (citing Holt, 921 F.2d at 1223). "The 'pain standard' is applicable to other subjective symptoms as well." Crow v. Comm'r, Social Security Admin., 571 Fed. Appx. 802, 807 (11th Cir. 2014)

14

(citing <u>Dyer v. Barnhart</u>, 395 F.3d 1206, 1210 (11th Cir. 2005)). The ALJ must consider the claimant's testimony of pain and other subjective symptoms if the standard is met. <u>See</u> <u>Foote v. Chater</u>, 67 F.3d 1553, 1560 (11th Cir. 1995). "If the ALJ discredits subjective testimony, he must articulate explicit and adequate reasons for doing so." <u>Wilson</u>, 284 F.3d at 1225 (citing <u>Hale v. Bowen</u>, 831 F.2d 1007, 1011 (11th Cir. 1987)). The relevant Social Security regulations provide that factors which will be considered by the ALJ in evaluating a claimant's subjective symptoms include: (1) daily activities; (2) location, duration, frequency, and intensity of the claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication the claimant takes to alleviate her symptoms; (5) treatment received, other than medication, for the relief of symptoms; (6) measures used for the relief of symptoms; and (7) any other factors concerning the functional limitations and restrictions due to the claimant's symptoms. <u>See</u> 20 C.F.R. §§ 404.1529, 416.929; SSR 96-7p. "A clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court." <u>Foote</u>, 67 F.3d at 1562 (citing <u>MacGregor v. Bowen</u>, 786 F.2d 1050, 1054 (11th Cir. 1986)).

15

In the present case, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged subjective symptoms. However, the ALJ concluded that Plaintiff's statements regarding the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence in the record. [R. at 25-27]. Given the context of the ALJ's discussion regarding Plaintiff's subjective allegations, it is clear that the ALJ's credibility finding encompassed her testimony about both her pain and the side effects resulting from her medications. See Walker v. Comm'r of Social Security, 404 Fed. Appx. 362, 367 (11th Cir. 2010).

The ALJ offered an extensive discussion of Plaintiff's medical impairments and her testimony regarding pain and other subjective symptoms. The ALJ noted that Plaintiff alleged in a June 2014 function report that she has diabetic neuropathy in her hands and feet and that this limits her mobility and balance. [R. at 25, 250-57, 268-73]. Plaintiff reported that she needed help with vacuuming, washing dishes, and putting clothes in the dryer. [Id.]. She also stated that she has difficulty sustaining attention and concentration. [Id.]. The ALJ pointed out that Plaintiff testified at the hearing that she is limited to walking no more than five to ten minutes because of pain in her feet and that she can only sit for twenty to thirty minutes because of pain in her

16

back and hip.  [R. at 26, 53-58].  In addition, Plaintiff testified that she suffers from hypertension which causes headaches and tiredness.  [Id.].  The ALJ cited to medical records showing that Plaintiff's uncontrolled diabetes with diabetic neuropathy has resulted in burning pain, tingling, and numbness in her legs, feet, and hands.  [R, at 26, 387, 392, 448, 457, 651, 652, 658].  Finally, Plaintiff reported that side effects from her prescribed medications included drowsiness, balance problems, dizziness, and disorientation.  [R. at 26-27, 60].

The ALJ offered a number of reasons with substantial supporting evidence for finding that Plaintiff's subjective symptoms were not entirely credible.  [R. at 25-27]. The ALJ noted that Plaintiff reported that she was able to perform self-care needs without assistance, prepare light meals, complete household cleaning, do laundry, drive, and shop for groceries.  [R. at 25-27, 43, 53-58, 250-57, 785].  Although Plaintiff stated that she has difficulty sustaining attention and concentration due to depression, the record reveals that she is able to follow verbal and written instructions and that she can get along well with people.  [R. at 25, 247, 249, 256, 257].  The ALJ also noted that, while Plaintiff reported low back pain due to degenerative disc disease, she testified that she was able to treat her back problems by using only hot compresses and Advil.  [R. at 26, 68].

AO 72A
(Rev.8/82)

In addition, the ALJ cited to numerous documents in the record showing that Plaintiff has not been compliant with her medications. [R. at 26-27, 387, 392, 430, 658, 688]. The ALJ wrote, "The claimant should use insulin before breakfast and before dinner . . . but she has, at times, not been compliant." [R. at 26]. The ALJ explained that, although Plaintiff "alleged ongoing and worsening burning, tingling, and numbness of both upper and lower extremities, this occurred mainly due to non-compliance of missing doses of Insulin in the evening." [R. at 27, 387, 392, 430, 658, 688]. Various treatment notes from 2013 through 2015 cited by the ALJ state that Plaintiff "does not take medication as prescribed, takes insulin once per day, misses PM dose;" that she is "noncompliant much of the time – misses bedtime Humulin N and Humulin R at dinner" approximately two to three times per week; that she "has not been taking insulin in the morning;" and that she "misses PM doses of Humulin" and "forgets to take atorvastatin." [R. at 26, 387, 392, 430, 658]. Plaintiff's repeated failure to comply with prescribed treatment supports the ALJ's credibility determination.

The ALJ pointed out that, not only has Plaintiff often failed to follow prescribed medication treatment, she has also been advised repeatedly to comply with physicians' instructions on diet and exercise. [R. at 27, 666]. As the Commissioner notes, Plaintiff

18

has admitted to treatment providers at various times that she "does not follow a healthy diet, drinks sugary drinks, and feels like she is in 'denial' about diabetes." [R. at 26-27, 389, 397, 665-66, 676]. Plaintiff has also acknowledged that she is "not following a healthy food plan," that "she is not eating the right foods," and that she makes "unhealthy choices and state[s] 'I know better.'" [Id.]. In a July 2015 treatment note cited by the ALJ, Dr. Hope Mitchell wrote, "I have repeatedly advised [Plaintiff] to comply with diet, exercise, and medications." [R. at 666].

The record reveals that, when Plaintiff has followed prescribed treatment, she has experienced medical improvement in pain and other symptoms. [R. at 27]. This fact was discussed by the ALJ and provides additional support for his finding that Plaintiff's subjective allegations were not entirely credible. Plaintiff reported that, after she took Gabapentin, her foot pain improved significantly. [R. at 27, 651]. A treatment note from January 2015 reported that Plaintiff "states that Gabapentin has really helped" and that she "reports much improvement in feet." [R. at 651]. The ALJ explained that, although Plaintiff experienced ulceration of the feet, "once again the evidence shows all wounds healed and resolved upon claimant becoming compliant with medication." [R. at 27, 427, 428].

19

The ALJ cited to record evidence that is not consistent with Plaintiff's allegations of disabling limitations. Although Plaintiff testified that she can only walk for five to ten minutes because of pain in her feet, upon physical examination, Plaintiff walked with a normal gait and there was no evidence of any edema in her extremities. [R. at 26-27, 53-58, 787]. Moreover, Plaintiff's motor strength in both upper and lower extremities was 5/5. [R. at 27, 787]. The ALJ also pointed out that Plaintiff "has no treating source opinion that provides functional limitations." [R. at 27].

With regard to Plaintiff's alleged medication side effects, as noted *supra*, Plaintiff reported that her prescribed medications caused drowsiness, balance problems, dizziness, and disorientation. [R. at 26-27, 60]. The ALJ found that Plaintiff's RFC allowed her to perform medium work except that she "must never climb ladders, ropes, or scaffolds" and "must avoid all unprotected heights or unprotected machinery." [R. at 24]. The court finds that substantial evidence supports the ALJ's decision not to include more significant functional limitations resulting from the side effects from Plaintiff's medications.

The ALJ noted that, although Plaintiff was initially treated for hypertension with Lisinopril, it caused side effects of dizziness. [R. at 27, 392]. Lisinopril was changed to Losartan in the fall of 2013, and Plaintiff "denie[d] any side effects for medication

AO 72A
(Rev.8/82)

change." [R. at 27, 384]. Plaintiff testified at the hearing that Gabapentin made her drowsy. [R. at 60]. On June 30, 2014, Plaintiff reported to her physician that, because Gabapentin makes her sleepy, she mostly takes it in the evening. [R. at 458, 520]. Plaintiff also reported drowsiness resulting from Gabapentin to her physicians on September 16, 2014, and a few weeks later on October 8, 2014. [R. at 60, 439, 448, 501].

While these records show that Plaintiff complained about drowsiness caused by Gabapentin on a few occasions in 2014, the evidence indicates that more frequently, no side effects were noted by Plaintiff's physicians. Plaintiff explicitly denied any side effects from medications in October and November 2013. [R. at 384, 389]. In addition, treatment records from Plaintiff's physicians reveal that no medication side effects were noted in January 2014, January 2015, March 2015, July 2015, October 2015, and January 2016. [R. at 536, 651, 657, 664, 675, 688]. Although Plaintiff's reports of side effects were recorded a few times in the treatment records, there is no indication that Plaintiff's physicians were concerned about any side effects from her medications. See Walker, 404 Fed. Appx. at 367 ("Nothing in Walker's testimony suggested that her headaches and dizziness were severe enough to be disabling either alone or in combination with her other impairments. Apart from her own subjective

AO 72A
(Rev.8/82)

statements, there is no evidence in the record that any of Walker's other symptoms actually were caused by her medications."); <u>Swindle v. Sullivan</u>, 914 F.2d 222, 226 (11th Cir. 1990) (holding that, although the plaintiff "felt that one medication might be giving her headaches," substantial evidence supported the "ALJ's determination that side effects from medication did not present a significant problem" because "the record did not disclose any concerns about side effects by the several doctors who examined and treated her"). The evidence as a whole does not suggest that the complained-of side effects would result in additional functional limitations that were not included in the ALJ's RFC assessment.

In conclusion, the ALJ offered a thorough discussion of Plaintiff's allegations and he presented clearly articulated reasons supported by the record for making his credibility determination. <u>See</u> <u>Foote</u>, 67 F.3d at 1562. A reasonable person would accept the evidence cited by the ALJ as adequate to support his finding that, although Plaintiff's impairments and medications could reasonably be expected to cause her alleged subjective symptoms, her statements regarding the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the record. <u>See</u> <u>Lewis</u>, 125 F.3d at 1440. Therefore, remand is not appropriate.

AO 72A

(Rev.8/82)

## VI.    Conclusion

For all the foregoing reasons and cited authority, the court finds that the ALJ's decision was supported by substantial evidence and was based upon proper legal standards.    It is, therefore, **ORDERED** that the Commissioner's decision be **AFFIRMED**.    The Clerk is **DIRECTED** to enter judgment in favor of the Commissioner.[1]

**SO ORDERED**, this 8th day of August, 2019.

JANET F. KING
UNITED STATES MAGISTRATE JUDGE

---

[1]On December 26, 2018, an administrative order was issued staying this case in light of lapse of appropriations.  [Doc. 14].  The stay was lifted as of January 25, 2019.

AO 72A

(Rev.8/82)